UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

------------------------------------x
KIRK LLOYD,                         :
                                    :
                Plaintiff,          :
                                    :
v.                                  : Civil No. 3:09CV227(AWT)
                                    :
THE TOWN OF WOLCOTT POLICE          :
DEPARTMENT, DON THERKILDSEN, SR.    :
and DON THERKILDSEN, JR.            :
                                    :
                Defendants.         :
------------------------------------x

**RULING ON MOTION FOR SUMMARY JUDGMENT**

Kirk Lloyd ("Lloyd") brings this action against the Town of Wolcott Police Department (the "Wolcott P.D."), Don Therkildsen, Sr. ("Therkildsen Senior") in his official capacity, and Don Therkildsen, Jr. ("Therkildsen Junior") in his individual capacity. Count One sets forth a claim pursuant to 42 U.S.C. § 1983 against Therkildsen Senior and Therkildsen Junior for false arrest and false imprisonment. Count Two sets forth a Monell claim against the Wolcott P.D.. Count Three sets forth a claim for intentional infliction of emotional distress against Therkildsen Junior and Therkildsen Senior. The defendants have moved for summary judgment with respect to all of the plaintiff's claims. For the reasons set forth below, the defendants' motion for summary judgment is being granted.

1

## I. FACTUAL BACKGROUND

Therkildsen Senior is the deputy chief of police at the Wolcott P.D.. Therkildsen Junior is an assistant state's attorney for the Judicial District of Waterbury and a resident of the town of Wolcott (the "Town"). Lloyd is a resident of Minnesota.

On April 1, 2006, Lloyd, his wife, Jennifer Lloyd, and their infant son traveled from Minnesota to John F. Kennedy International Airport for the purpose of visiting Lloyd's terminally ill grandmother in Connecticut. After arriving at the airport, they were met by Christina Perez ("Perez"), a friend of Lloyd's wife. The Lloyd family and Perez made their way to Lloyd's brother's house in Waterbury, Connecticut. Around midday, Lloyd, his family, and Perez departed along Route 8 en route to Stratford, Connecticut in order to visit Lloyd's grandmother.

At some point along the way, Lloyd realized that they were off course, so he telephoned his brother for directions. Lloyd's brother informed him that they were headed in the wrong direction and advised him to turn around. Lloyd chose to make a U-turn in the driveway of Therkildsen Junior's home.

As Lloyd prepared to exit the driveway, he was confronted by Therkildsen Junior, who was returning home and pulled alongside Lloyd's car. He inquired why Lloyd was on his property. Lloyd informed Therkildsen Junior that he was lost and was using the

2

driveway to make a U-turn. Therkildsen Junior identified himself to Lloyd as the homeowner only. As Lloyd proceeded to exit the driveway, Therkildsen Junior made a telephone call on his cell phone and instructed Lloyd to remain in place because he was calling the police. Lloyd called his brother a second time for directions back to Route 8. Lloyd then exited the driveway, with Therkildsen Junior following in his own vehicle as he called in a report to the 911 emergency operator.

Within several minutes, Lloyd was pulled over by Officer Rocco Longo of the Wolcott P.D.. Longo proceeded to question Lloyd about his activity at Therkildsen Junior's house. Lloyd informed Longo that he had gotten lost on the way to Route 8 and had decided to make a U-turn in Therkildsen Junior's driveway. Jennifer Lloyd and Perez also told the officers that they had made a U-turn in Therkildsen Junior's driveway. Longo was joined at the scene by two other officers, Officer Leonard Greene, the primary investigating officer, and Officer Jeffrey Bender, the supervising officer. Lloyd was questioned further. He then observed the officers speak to Therkildsen Junior, who had arrived at the scene and was talking on his cell phone. Lloyd witnessed Therkildsen Junior hand his cell phone to one of the officers, who appeared to hold a short conversation with whomever was on the line.

Lloyd was then placed under arrest and transported to the

3

headquarters of the Wolcott P.D. When Lloyd asked Bender why he was being arrested, Bender stated that "we had to arrest you because they've got more juice than we do." (Aff. of Kirk Lloyd (Doc. No. 26-2)("Lloyd Aff.") ¶ 8.) Prior to Lloyd being charged with any offense, Therkildsen Junior and Greene returned to Therkildsen Junior's property to look for signs of a burglary. Greene did not find evidence of a forced entry or an attempted forced entry, but he did observe fresh tire marks along the rear of Therkildsen Junior's property. After Greene consulted with the other officers, Lloyd was charged with interfering with a police investigation, simple trespass, and criminal mischief.

## II. LEGAL STANDARD

A motion for summary judgment may not be granted unless the court determines that there is no genuine issue of material fact to be tried and that the facts as to which there is no such issue warrant judgment for the moving party as a matter of law. Fed. R. Civ. P. 56(c). See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Gallo v. Prudential Residential Servs., 22 F.3d 1219, 1223 (2d Cir. 1994). When ruling on a motion for summary judgment, the court may not try issues of fact, but must leave those issues to the jury. See, e.g., Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986); Donahue v. Windsor Locks Bd. of Fire Comm'rs, 834 F.2d 54, 58 (2d Cir. 1987). Thus, the trial court's task is "carefully limited to discerning whether there

4

are any genuine issues of material fact to be tried, not to deciding them. Its duty, in short, is confined . . . to issue-finding; it does not extend to issue-resolution." Gallo, 22 F.3d at 1224.

Summary judgment is inappropriate only if the issue to be resolved is both genuine and related to a material fact. Therefore, the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. An issue is "genuine . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248 (internal quotation marks omitted). A material fact is one that would "affect the outcome of the suit under the governing law." Anderson, 477 U.S. at 248. Only those facts that must be decided in order to resolve a claim or defense will prevent summary judgment from being granted. Immaterial or minor facts will not prevent summary judgment. See Howard v. Gleason Corp., 901 F.2d 1154, 1159 (2d Cir. 1990).

When reviewing the evidence on a motion for summary judgment, the court must "assess the record in the light most favorable to the non-movant and . . . draw all reasonable inferences in its favor." Weinstock v. Columbia Univ., 224 F.3d 33, 41 (2d Cir. 2000)(quoting Delaware & Hudson Ry. Co. v. Consolidated Rail Corp., 902 F.2d 174, 177 (2d Cir. 1990)).

However, the inferences drawn in favor of the nonmovant must be supported by the evidence. "[M]ere speculation and conjecture" is insufficient to defeat a motion for summary judgment. Stern v. Trustees of Columbia University, 131 F.3d 305, 315 (2d Cir. 1997) (quoting Western World Ins. Co. v. Stack Oil, Inc., 922 F.2d 118, 121 (2d Cir. 1990)). Moreover, the "mere existence of a scintilla of evidence in support of the [nonmovant's] position" will be insufficient; there must be evidence on which a jury could "reasonably find" for the nonmovant. Anderson, 477 U.S. at 252.

**III. DISCUSSION**

**A. § 1983: Count One - Therkildsen Senior in his official capacity and Count Two - the Wolcott P.D.**

With respect to the Wolcott P.D., "[a] municipal police department . . . is not a municipality nor a 'person' within the meaning of section 1983." Nicholson v. Lenczewski, 356 F.Supp.2d 157, 164 (D.Conn. 2005). "A municipal police department is a sub-unit or agency of the municipal government through which the municipality fulfills its policing function. Because a municipal police department is not an independent legal entity, it is not subject to suit under section 1983." Id. Accordingly, the claim against the Wolcott P.D. is being dismissed.

However, by bringing suit against Therkildsen Senior in his official capacity, the plaintiff brings suit against the Town.

See Brandon v. Holt, 469 U.S. 464, 472 n.21 (1985) ("[O]fficial-capacity suits generally represent only another way of pleading an action against an entity of which an officer is an agent."). Thus, the claim in Count One against Therkildsen Senior is a claim against the Town.

"In [Monell v. Department of Social Services, 436 U.S. 658 (1978),] the Supreme Court ruled for the first time that municipalities were liable under § 1983 to be sued as 'persons' within the meaning of that statute, when the alleged unlawful action implemented or was executed pursuant to a governmental policy or custom." Reynolds v. Giuliani, 506 F.3d 183, 190 (2d Cir. 2007). "A municipality and its supervisory officials may not be held liable in a § 1983 action for the conduct of a lower-echelon employee solely on the basis of respondeat superior. . . . In order to establish the liability of such defendants in an action under § 1983 for unconstitutional acts by such employees, a plaintiff must show that the violation of his constitutional rights resulted from a municipal custom or policy." Ricciuti v. N.Y.C. Transit Authority, 941 F.2d 119, 122 (2d Cir. 1991)(citation omitted). Thus, "a plaintiff must demonstrate that, through its deliberate conduct, the municipality was the 'moving force' behind the alleged injury." Roe v. City of Waterbury, 542 F.3d 31, 36-37 (2d Cir. 2008) (citation omitted).

"Where the contention is not that the actions complained of were taken pursuant to a local policy that was formally adopted or ratified but rather that they were taken or caused by an official whose actions represent official policy, the court must determine whether the official had final policymaking authority in the particular area involved." Jeffes v. Barnes, 208 F.3d 49, 57 (2d Cir. 2000). "The existence of such authority is a question of law." Id. The plaintiff must establish a causal link between the alleged policy or practice and the alleged constitutional violation. See City of Canton v. Harris, 489 U.S. 378, 385 ("[The] first inquiry in any case alleging municipal liability under § 1983 is the question is whether there is a direct causal link between a municipal policy or custom and the alleged constitutional deprivation.").

The plaintiff contends that Therkildsen Senior, as deputy police chief acting in his official capacity, was a decision-maker responsible for setting policies and practices for the Wolcott P.D, and that Therkildsen Senior directed the responding officers to make the arrest without probable cause during a cell phone call that they took from him at the scene of the arrest. As a direct consequence, the plaintiff argues, he was falsely arrested.

The parties agree that at approximately 12:45 p.m. on April 1, 2006, Therkildsen Junior confronted Lloyd in Therkildsen

8

Junior's driveway. Therkildsen Senior avers that he received a call at approximately 12:53 p.m. from Therkildsen Junior. Lloyd avers that he witnessed Therkildsen Junior talking on his cell phone at the scene of the arrest. Lloyd further avers that, prior to Lloyd's arrest, Therkildsen Junior handed his cell phone to one of the responding officers, who spoke briefly with whomever was on the line. Taking this evidence in the light most favorable to the plaintiff, a reasonable jury could conclude that Therkildsen Senior directed or otherwise influenced the responding officers to arrest Lloyd.

However, the presence of this genuine issue of fact, does not necessarily meant that Lloyd "has [produced evidence that there was] a constitutional violation at all." Kerman v. City of New York, 261 F.3d 229, 235 (2d Cir. 2001). Lloyd may not recover under a § 1983 false arrest and false imprisonment claim if the officers who arrested him had probable cause to do so. See, e.g., Panetta v. Crowley, 460 F.3d 388, 395 (2d Cir. 2006)(noting that existence of probable cause bars recovery for a claim of false arrest under § 1983); Johnson v. Ford, 496 F. Supp. 2d 209, 213 (D. Conn. 2007)(noting ". . . probable cause is a complete defense to claims of false imprisonment and false arrest."). "'[I]t is well-established that a law enforcement official has probable cause to arrest if he received his information from some person, normally the putative victim or

9

eye-witness' . . . unless the circumstances raise doubt as to the person's veracity." Panetta, 460 F.3d at 395 (citations omitted). "[W]hen faced with a claim for false arrest, we focus on the validity of the arrest, and not on the validity of each charge." Jaegly v. Couch, 439 F.3d 149, 154 (2d Cir. 2006).

Under Connecticut law, "[a] person is guilty of simple trespass when, knowing that he is not licensed or privileged to do so, he enters any premises without intent to harm any property." Conn. Gen. Stat. § 53a-110a(a). Prior to his arrest, Lloyd admitted to the responding officers that he was in Therkildsen Junior's driveway making a U-turn. Lloyd does not contend that he was licensed or privileged to be in the driveway at the time he was confronted by Therkildsen Junior, nor is there any other evidence that Lloyd was granted permission to access Therkildsen Junior's property. Furthermore, the arresting officers arrested Lloyd after speaking to Lloyd, Lloyd's passengers, and Therkildsen Junior and obtained the facts from both sides with respect to what occurred in Therkildsen Junior's driveway. There is no evidence that would tend to raise doubt as to the veracity of the complainant, Therkildesen, Junior. Consequently, given Lloyd's admission to having been on Therkildsen Junior's property, probable cause existed for a charge of simple trespass under Connecticut law, even if Lloyd was not charged with any offense until after Greene had checked

10

Therkildsen Junior's property for signs of a burglary.

Accordingly, given that probable cause is an absolute defense to a false arrest and false imprisonment claim under § 1983, summary judgment is being granted as to Count One with respect to Therkildsen Senior in his official capacity.

**B. § 1983: Count One - Therkildsen Junior in his individual capacity**

As discussed above, the existence of probable cause to arrest precludes a § 1983 false arrest and false imprisonment claim. However, the motion for summary judgment as to Therkildsen, Junior would be granted in any event because there is no evidence that could support a conclusion that his actions were taken "under color of state law" as required by § 1983.

The plaintiff contends that Therkildsen Junior instructed Therkildsen Senior to direct the responding officers to arrest the plaintiff without probable cause, that is, to make a false arrest in violation of his constitutional rights. To be liable under § 1983, an individual must act "under color of any statute, ordinance, regulation, custom or usage, of any State." 42 U.S.C. § 1983. If a court determines that the defendant was not acting under color of state law, the action may not proceed. In <u>United States v. International Brotherhood of Teamsters, Chauffeurs, Warehousemen, and Helpers of America</u>, the Second Circuit held

that "to qualify as state action, the conduct in question must be caused by the exercise of some right or privilege created by the State." 941 F.2d 1292, 1295-96 (2d Cir. 1991). This exercise of power must be "possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." Monsky v. Moraghan, 127 F.3d 243, 245 (2d Cir. 1997) (quoting West v. Atkins, 487 U.S. 42, 49 (1988)). State officials do not satisfy this test merely by virtue of their employment by the state. In O'Bradovich v. Village of Tuckahoe, 325 F. Supp. 2d 413 (S.D.N.Y 2004), the plaintiff contended that a municipal attorney acted under color of state law when the attorney filed a defamation suit against her. The court held that "regardless of how much power [the defendant] had . . . or how his job was classified, his right to access the courts to settle a civil claim is not a power that stemmed solely from his position as a Village Attorney. . . . [I]t is a right that stemmed from his status as a citizen of this country." Id. at 424-25 (applying Colombo v. O'Connell, 310 F.3d 115 (2d Cir. 2002)).

Under certain circumstances, private actors may be liable for acting "under color of state law" for the purposes of § 1983. See Dennis v. Sparks, 449 U.S. 24, 27-28 (1980)("'under color of' state law for § 1983 purposes does not require that the defendant be an officer of the State. It is enough that he is a willful

12

participant in joint action with the State or its agents."); Abbott v. Latshaw, 164 F.3d 141, 147 (3d Cir. 1998)(defendant could have been acting under color of state law for purposes of § 1983 when she allegedly paid police constable to unlawfully repossess her ex-husband's vehicle).  However, "the mere acquiescence of a state official in the actions of a private party is not sufficient." Gallagher v. Neil Young Freedom Concert, 49 F.3d 1442, 1453 (10th Cir. 1995).  Also, "merely complaining to the police does not convert a private party into a state actor. . . .  Nor is execution by a private party of a sworn complaint which forms the basis of an arrest enough to convert the private party's acts into state action." Collins v. Womancare, 878 F.2d 1145, 1155 (9th Cir. 1989)(citations omitted).

Although the police report attributes a statement to Lloyd to the effect that Therkildsen Junior identified himself as a state prosecutor during the initial encounter in Therkildsen Junior's driveway, Lloyd avers that Therkildsen Junior did not identify himself as a state prosecutor.  The plaintiff points to a conversation he had with Bender, who informed him that "we had to arrest you because they've got more juice then we do."  (Lloyd Aff. ¶ 15.)  The plaintiff argues that Therkildsen Junior was able to direct or influence the arrest by virtue of his position as a state prosecutor "who handled the prosecution of cases from

13

the very department for which the officers worked." (Opp. Br. (Doc. No. 26) at 5.) "There can be no doubt," the plaintiff argues, "that the Therkildsens wielded tremendous influence over the officers at the scene." (Id.) Therefore, according to the plaintiff, Therkildsen Junior was "a law enforcement official, not a civilian complainant." (Id.)

The arresting officers aver that they made an independent decision to arrest the plaintiff. Although there is conflicting evidence as to whether Therkildsen Junior attempted to exert his influence as a state prosecutor when confronting Llyod in the driveway of his home, and there is evidence that Therkildsen Junior contacted his father while at the scene of the arrest, there is no evidence that Therkildsen Junior ever stepped out of the role of the complainant at the scene of the arrest and attempted to invoke the authority of his office or to become a participant in the decision to make an arrest. The plaintiff has produced evidence that Therkildsen Junior was an influential member of the community and the officers took his complaint seriously, but something more in the way of an affirmative act on his part - - not merely his status - - is needed to create a genuine issue as to whether he exerted his influence as a state prosecutor or participated in making the decision to arrest Lloyd.

Accordingly, Therkildsen Junior is entitled to summary

14

judgment not only on the ground that there was probable cause to arrest the plaintiff, but also on the ground that evidence as to which there is no genuine issue shows that he was not acting under color of state law.

**C. Intentional Infliction of Emotional Distress**

The elements of a claim for intentional infliction of emotional distress are well-established. "In order for the plaintiff to prevail . . . . four elements must be established. It must be shown: (1) that the actor intended to inflict emotional distress or that he knew or should have known that emotional distress was the likely result of his conduct; (2) that the conduct was extreme and outrageous; (3) that the defendant's conduct was the cause of the plaintiff's distress; and (4) that the emotional distress sustained by the plaintiff was severe." Appleton v. Board of Educ. of Town of Stonington, 254 Conn. 205, 210 (2000)(quoting Petyan v. Ellis, 200 Conn. 243, 253 (1986)). "Whether an actor's conduct is 'extreme and outrageous' is an issue for the Court in the first instance . . ." Id. In light of Lloyd's admission that he engaged in conduct that constituted simple trespass and the court's conclusion that probable cause existed to arrest Lloyd, the actions of Therkildsen Senior and Therkildsen Junior did not constitute extreme and outrageous conduct. See, e.g., Winter v. Northrop, Civil Action No. 3:06cv216(PCD), 2008 WL 410428, *6 (D. Conn. Feb. 12, 2008);

15

Garcia v. Gasparri, 193 F. Supp. 2d 445, 453-54 (D. Conn. 2002).

**IV. CONCLUSION**

For the reasons set forth above, the defendants' Motion for Summary Judgment (Doc. No. 23) is hereby GRANTED.  The Clerk shall enter judgment in favor of the defendants and close this case.

It is so ordered.

Dated this 15th day of August 2011, at Hartford, Connecticut.

/s/AWT
Alvin W. Thompson
United States District Judge